LEIDERSDORF vs. THE SECOND WARD SAVINGS BANK, imp.

LEIDERSDORF vs. JACOBS, imp.

*October 18 — November 10, 1880.*

PLEADING: JOINDER. *(1) Joinder of defendants: Averments in the alternative. (2) Misjoinder of causes.*

1. In an action to reform plaintiff's indorsement upon a note transferred by him to J., averments that J. was and still is cashier of a certain bank, and that said note is held " *either* by J., *or* by said bank with full notice of the facts," are not sufficient to show a cause of action against the bank.

Leidersdorf vs. The Second Ward Savings Bank, imp.

2. The complaint states, (1) a cause of action for *damages* accruing to plaintiff from defendant's false and fraudulent representations by which plaintiff was induced to sell *his own stock* in a certain corporation to X. upon credit, and accept for the price X.'s notes, which were worthless; and (2) a cause of action *in equity* to relieve plaintiff from liability on his unqualified indorsement of notes of X. running to himself, and which he took as defendant's agent and by defendant's direction, upon a sale to X. *of defendant's stock* in the same corporation, the only ground of relief stated being, that he was induced to make such unqualified indorsement by the false representations of the defendant's agent. *Held*, that the two causes of action did not "arise out of the same transaction" (subd. 1, sec. 2647, R. S.), and are improperly joined.

3. It appearing that if the complaint states *any* cause of action it states *two*, which cannot properly be joined, this court affirms an order sustaining a demurrer for the misjoinder, without inquiring whether the complaint sufficiently states *any* cause of action.

APPEALS from the County Court of *Milwaukee* County.

The facts alleged in the complaint are substantially as follows: In 1847 plaintiff owned a large amount of stock in the Banner and Volksfreund Printing Company, a corporation of this state doing business in Milwaukee. The defendant *Jacobs* also owned stock in that company, which he wished to sell to plaintiff, and which plaintiff desired to purchase or control. After some negotiations between plaintiff and *Jacobs* on the subject, the former opened negotiations with one Gueterbock and one Bætz for the sale of his stock to them. Pending these negotiations, it was agreed between plaintiff and *Jacobs* that the stock of the latter might also be sold to Bætz and Gueterbock by plaintiff, as his own, in connection with his sale, and that the notes of Bætz or of Bætz and Gueterbock should be accepted by plaintiff in payment therefor and afterwards turned over by him to *Jacobs* in payment for the stock of the latter. As plaintiff hesitated about accepting said notes, because he was not acquainted with the pecuniary responsibility of Bætz, *Jacobs* assured him that Bætz was a person of undoubted and substantial pecuniary responsibility; that he was worth at least $50,000, and would unquestionably be able to

pay the notes which he should give in purchase of said stock. *Jacobs* was then the cashier, and one Schmidt assistant cashier, of the *Second Ward Savings Bank*, a corporation doing an extensive business in the city of Milwaukee; and each of them repeatedly assured plaintiff that they were well acquainted with the circumstances of Bætz, and that he was abundantly responsible. Relying upon these representations, plaintiff sold his said stock, including that of *Jacobs*, to Bætz and Gueterbock, and received therefor the notes of Bætz and of Bætz and Gueterbock, part of which were taken in part payment for the stock of *Jacobs*, and were to be transferred to him pursuant to the aforesaid arrangement. Afterwards, on demand therefor, plaintiff delivered to said Schmidt, acting in behalf of *Jacobs*, such of the notes as were to be given to the latter for his stock, one of which, executed by Bætz and Gueterbock, dated July 21, 1877, for $2,000 and interest, was payable October 15, 1880, to plaintiff's order at the *Second Ward Savings Bank*. When the notes were so delivered to Schmidt, the latter, on behalf of *Jacobs*, requested plaintiff to indorse them for the purpose of transferring the title to *Jacobs;* and, upon his hesitating to do so, because he did not wish to make himself liable thereon, Schmidt again repeated the representations and assurances " that Bætz was perfectly responsible, and that said note would undoubtedly be paid, and that plaintiff would incur no risk or responsibility in indorsing said note, as it would be held by *Jacobs* entirely upon the credit of the makers according to the original understanding between plaintiff and *Jacobs*. " Relying upon the representations then and previously made by Schmidt and *Jacobs*, plaintiff indorsed said note and transferred it to *Jacobs*. Said representations of *Jacobs* and Schmidt were " knowingly and wilfully false, and were fraudulently made to the plaintiff for the purpose of inducing him to accept the notes of said Bætz and to indorse the note aforesaid to *Jacobs*. " *Jacobs* is still the cashier of the *Second Ward Savings Bank*, and the note so indorsed by plaintiff is held either

by *Jacobs* or by said *Bank* with full notice of the foregoing facts. The makers are irresponsible and unable to pay it, and have failed to pay the interest thereon; and that one of the defendants who holds it, intends or is likely to transfer it before maturity to some person ignorant of the circumstances attending the indorsement, for the purpose of enabling such holder to enforce the collection thereof against the plaintiff, who is pecuniarily responsible. One of the notes of Bætz and Gueterbock which plaintiff was induced by said false and fraudulent representations of *Jacobs* and Schmidt to receive upon the sale of his stock, was dated July 21, 1877, and payable October 15, 1879, and was for $2,000 with interest; and $140 interest only has been paid upon it, and the remainder is due and unpaid; and by reason of the insolvency of Bætz and the lack of pecuniary means of Gueterbock, the note is uncollectible. Judgment is demanded against both defendants for the amount remaining due on the last named note, and that defendants and each of them, their agents, etc., may be restrained from transferring the note indorsed by plaintiff; and that plaintiff's indorsement may be cancelled, or the words " without recourse " may be prefixed thereto.

Each of the defendants demurred to the complaint on the ground that several causes of action were improperly united and not separately stated; and also demurred to each cause of action for insufficiency of facts. The demurrers were sustained; and plaintiff appealed from both orders.

For the appellant there was a brief by *Carpenter & Smiths*, and oral argument by *Winfield Smith*.

For the respondent there was a brief by *Cotzhausen, Sylvester & Scheiber,* and oral argument by *Mr. Cotzhausen*.

TAYLOR, J. The appeals in these cases are taken from an order of the court below sustaining the separate demurrers of the two respondents to the complaint of the plaintiff. There is but one action, and but one opinion will be necessary to

dispose of both appeals. We think the court properly sustained the demurrer of the respondent the *Second Ward Bank*, on the ground that the complaint does not state facts sufficient to constitute a cause of action as to the bank. The only allegations in the complaint which in any way tend to connect the bank with the case are the following: "The defendant *Jacobs* is still the cashier of the *Second Ward Savings Bank*, the defendant, and the promissory note so indorsed by the plaintiff is held either by the defendant *Jacobs* or by the defendant the *Second Ward Savings Bank*, with full notice of the foregoing facts."

We think this allegation quite insufficient to show a transfer of the note mentioned in the complaint to the *Second Ward Savings Bank*. The other allegations of the complaint show that the respondent *Jacobs* was the owner and holder of the note in question, and that the same was delivered by the plaintiff to him as his property and not the property of the savings bank. Under the allegations of the complaint, no cause of action is claimed to be stated against the bank, and no relief demanded as to the bank, unless the bank be the owner and holder of the note by transfer from *Jacobs* to it; and, as no such transfer is alleged in the complaint, there is no more reason for making the bank a party to the action than for making any other stranger a party thereto.

One of the grounds of demurrer of the respondent *Jacobs* is, that it appears on the face of the complaint that several causes of action are improperly united. If it be admitted that the facts set out in the complaint are sufficient to constitute a cause of action against *Jacobs*, then we think it must also be admitted that it states facts sufficient to constitute two causes of action — one to recover damages for the loss sustained by the plaintiff in selling his own stock to Bætz and receiving Bætz's notes therefor, relying upon the alleged false representations of the respondent *Jacobs* as to the pecuniary responsibility of said Bætz; and another, to be relieved from

Leidersdorf vs. The Second Ward Savings Bank, imp.

his liability as indorser of a note taken by him on the sale of *Jacobs'* stock to Bætz, at the request and direction of *Jacobs*, alleging that he was induced to indorse said note, which had been taken payable to the order of the plaintiff, so as to make himself liable thereon as indorser, by other false and fraudulent representations made by the authorized agent of said *Jacobs*. The allegations of the complaint show that appellant was duly authorized by *Jacobs* to sell *Jacobs'* stock to Bætz, and take his, Bætz's, note for the purchase price, and that appellant had so sold *Jacobs'* stock and taken Bætz's note therefor, and held it for the use of the respondent *Jacobs*. Appellant was not, therefore, under any obligation to indorse said note so as to make himself liable to *Jacobs* as indorser thereof. This is expressly alleged in the complaint. It is further alleged that appellant was induced to indorse the note so as to make himself liable thereon by reason of alleged false and fraudulent representations made by *Jacobs'* agent at the time such indorsement was obtained; and the relief sought is, that the indorsement so obtained may be so modified that it shall be without recourse to him as indorser. Here we have two separate causes of action, one of which is strictly what was formerly denominated an action at law to recover damages sustained by the appellant, which he alleges he has suffered in consequence of his relying upon certain false and fraudulent representations made by the respondent *Jacobs*, and which induced him to sell his stock to Bætz and accept in payment therefor Bætz's notes, which have turned out to be worthless; and another cause of action, which is strictly an equitable action, brought to set aside a contract of indorsement of a negotiable promissory note which is not yet due, and on account of which the plaintiff has not yet suffered any damage.

The only authority for uniting these two causes of action in the same complaint must be found, if found at all, in subdivision 1, sec. 2647, R. S., which reads as follows: "The plaintiff may unite in the same complaint several causes of

action, whether they be such as were formerly denominated legal or equitable, or both, when they arise out of — *first*, the same transaction or transactions connected with the same subject of action." It is insisted by the learned counsel for the appellant, that the two causes of action set out in the complaint arise out of the same transaction, and are therefore properly joined under the provision of the statute above quoted. We think he is mistaken in this conclusion. It appears to us that the two causes of action are entirely distinct from each other, and arise out of two distinct and separate transactions. The first cause of action relates solely to the transaction in reference to the sale of plaintiff's stock to Bætz, and his claim to a recovery is founded upon the false representations alleged to have been made by the respondent *Jacobs* to induce him to make the sale, and upon which he acted in making the sale. The moment, therefore, when the sale was made, and it appeared that the representations made were false, and that the plaintiff was injured thereby, the appellant's cause of action to recover damages was perfect. The fact that he took the note for *Jacobs'* stock at the time he took the notes for his own, did not give him any right of action against *Jacobs* on account of his taking and holding such note. He had simply done what *Jacobs* authorized him to do, and was in no way injured by reason of his having taken such note. He afterwards indorsed this note and delivered it to *Jacobs*, and his second cause of action is based upon the transaction which took place at the time of the indorsement and delivery, and not upon what took place at the time of the sale, or which induced him to make the sale. The fact that he indorsed the note which he took on the sale of *Jacobs'* stock is no more the same transaction as the sale, than if he had at the time held some other note for *Jacobs*, and had been induced to indorse the same by his false representations.

It seems to us quite clear that the plaintiff would have stated no cause of action arising out of this indorsement, if

he had made such indorsement without objection, and without any representations then made by *Jacobs* or his agent, which induced such indorsement. True, the complaint alleges that, relying upon the representations previously made by *Jacobs* as to the pecuniary ability of Bætz, and upon the representations made at the time by the agent of *Jacobs*, he made the indorsement; but it is nowhere alleged in the complaint that the representations made by *Jacobs* personally were made for the purpose of inducing him to indorse the note in question. In fact, the allegations of the complaint show that it was agreed between plaintiff and *Jacobs* that the notes plaintiff should receive from Bætz should be held by the plaintiff for the sole benefit of *Jacobs*, and should be turned over by plaintiff to *Jacobs* in payment for his stock, and that plaintiff should incur no liability to *Jacobs* on account of said notes. It is true that, further along in the complaint, the plaintiff alleges " that the representations of both *Jacobs* and his agent Smith were false, and were fraudulently made to the plaintiff for the purpose of inducing him to accept the notes of the said Bætz, and to indorse the note aforesaid to the said *Jacobs*." This allegation might be entirely true, and yet be entirely consistent with the fact that the representations of *Jacobs* himself were made, as it appears from the other allegations of the complaint they were, for the sole purpose of inducing the plaintiff to sell his stock and accept in payment the notes of Bætz.

The causes of action stated in the complaint not arising out of the same transaction, and the one being what was formerly denominated a legal and the other an equitable action, they cannot be joined in the same complaint, and the court below properly sustained the demurrer of *Jacobs* upon the ground that several causes of action were improperly joined.

The learned counsel for the appellant insists that these causes of action may be properly joined, under subdivision 3 of said section 2647, as actions for injuries with or without force to

person or property.  We have carefully examined the cases cited upon this point, and think they fail to establish any right to join them under that provision.

The case of *Riemer v. Johnke*, 37 Wis., 258, was an action of ejectment, and contained allegations showing that the defendant was in possession, committing waste upon the lands, and prayed an injunction to restrain the defendant from further wasting the property.  The court held that there was no separate cause of action stated as to the waste, and that the allegations were properly in the complaint as a foundation for asking an injunction pending the action, to preserve the plaintiff's property.  *Damon v. Damon*, 28 Wis., 510, was an action for divorce by the wife, with a claim for alimony.  A third person, who, it was alleged, had taken a conveyance of some part of the husband's property for the purpose of defeating the plaintiff's recovery of alimony, was made a party.  The court held that the allegations of facts showing the value of the defendant's property, in order to show what amount of alimony would be proper, did not constitute a separate cause of action, and that the joinder of the third person as a defendant was necessary and proper in order to enforce any decree for alimony which might be decreed in the case.

*Blake v. Van Tilborg*, 21 Wis., 672, was an action brought by the plaintiff to compel the defendant Van Tilborg to account, as the agent of the plaintiff, for money and property received by him as such agent, and contained allegations showing that defendant had with such money and property of the plaintiff purchased lands and conveyed the same, without any consideration, to two other persons, who were also made defendants.  The complaint was sustained on the ground that a complaint is not multifarious "which sets out a cause of action so entire against one defendant as to be incapable of prosecution as to him in several suits, although other defendants may be necessary parties to only a portion of the case."  The court likened the case to an action by a judgment creditor

to reach the property of the debtor fraudulently conveyed by separate conveyances to different persons who are made defendants. In such cases the rights of all the parties may be adjudicated in one action.

The case of *Bassett v. Warner*, 23 Wis., 673, was similar to the case of *Blake v. Van Tilborg*. It was an action against an administrator for an accounting, and a third person was made a party to the action on allegations that the administrator had conveyed land belonging to the estate to him fraudulently, and that he was cognizant of the fraud. It was held that the complaint was not multifarious, and that the causes of action were properly joined.

The case of *Truesdell v. Rhodes*, 26 Wis., 215, simply decides that a complaint is not subject to the objection that two causes of action are improperly joined, which, in fact, states but one good cause of action, and contains other allegations which do not constitute a separate cause of action.

None of these cases are similar to the one at bar. Here two causes of action different in their nature, and not so connected that it is at all necessary to connect the one with the other, and which require different trials, are joined. The trial of the action to recover the damages for the injury sustained by the plaintiff by reason of the sale of his stock, would not in any way interfere with the right of the plaintiff to maintain a second to be relieved from his indorsement of the note belonging to *Jacobs*. There is nothing to be gained by the joinder of these actions, but much inconvenience arises therefrom. They necessarily require separate trials, one by the court and the other by a jury, and their joinder should not be permitted unless they come clearly within the statute.

We have not considered whether the allegations in the complaint are sufficient to constitute a cause of action, either at law or in equity; but assume that, if they are sufficient for the one purpose, they are equally so for the other. If they are sufficient to constitute one cause of action, they are equally

sufficient to constitute two causes, and therefore the complaint is bad on account of the improper joinder of the two causes.

*By the Court.* — The order of the county court is affirmed as to both the respondents, and the cause remanded for further proceedings according to law.