## COLORADO EASTERN R. CO. v. CHICAGO, B. & Q. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. November 9, 1905.)

No. 2,279.

1. INJUNCTION—TEMPORARY INJUNCTION—EFFECT—SHOWING REQUIRED.

The granting of a temporary injunction does not determine the rights of the parties. The court need be satisfied no further than of a probable right and a probable danger, and that such right may be defeated without the interposition of a restraining order, and that the granting of such order will probably be attended with less injury to the respondent than to the complainant.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, §§ 302–309.]

2. COURTS—UNITED STATES COURTS—JURISDICTION—RESTRAINING CONDEMNATION PROCEEDINGS.

Section 720, Rev. St. U. S. [U. S. Comp. St. 1901, p. 581], declaring that the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, has no application to the instance of a nonresident owner of land entered upon by the defendant in condemnation proceedings instituted in the state court, to which such nonresident owner is not made a party, and does not prevent him from applying to the United States Circuit Court for an injunction to restrain the trespass upon his land.

3. EMINENT DOMAIN—REMEDIES OF OWNER—INJUNCTION.

The provision of the state statute of Colorado (3 Mills' Ann. St. Rev. Supp. § 1716) authorizing the plaintiff in condemnation proceedings to proceed against the apparent owner of the land of record, and, after paying into court the prima facie damage to the land, to enter and begin the construction of a railroad thereon, does not preclude the real owner from enjoining the further entry and use of his land, especially where the petitioner for condemnation, before entry, has notice of the claim of title to such premises by such third party.

4. SAME—RIGHT TO BECOME PARTY.

Section 1726, Mills' Ann. St. Colo., providing that any person not made a party to such proceeding may become such by filing a cross-petition at any time before hearing, setting forth that he is an owner or has an interest in the property sought to be taken, etc., and that the rights of such persons shall thereupon be fully considered and determined, is only permissive in character, and does not operate to deny such third party, a nonresident, the right to appeal by injunction to the United States Circuit Court to prevent the appropriation of his land. Such statutes do not meet the requirement of due process of law, as the law abhors a judgment without notice.

**5. SAME—RELIEF GRANTED.**

As the state statute of Colorado in condemnation proceedings authorizes the petitioner to institute the same in the state district court, with the right to amend the petition at any time before final judgment by bringing in a new party defendant, a temporary restraining order at the suit of a nonresident owner of the land, not made a party to the proceeding, ought not to enjoin the petitioner for condemnation from making such claimed owner a party defendant therein. Such nonresident, when made a party defendant, may remove the controversy into the federal court, and there try out the whole question of the right to appropriate by condemnation his land to the use of the petitioner.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Colorado.

On the 15th day of April, 1905, the complainant, Chicago, Burlington & Quincy Railway Company, an Iowa corporation, filed in the United States Circuit Court for the District of Colorado its bill of complaint against the Colorado Eastern Railroad Company, a Colorado corporation, alleging that since the 20th day of November, 1901, the complainant has been the owner of two parcels of land, known as "Parcel No. 1" and "Parcel x or No. 2," within the corporate limits of the city of Denver; that it had obtained said property by mesne conveyances under the Republican Valley Railroad Company and the Burlington & Colorado Railroad Company; that said parcels of land had, long prior to said acquisition of title, been appropriated to the use of said railroad companies for railway tracks, switches, and terminal facilities; that at the time hereinafter complained of the same was being so actually used by the complainant, or such portions of it as were not being so actually used were absolutely necessary for its future uses in the development of its business; that in the latter part of the month of March, 1905, while the complainant was so in and entitled to the exclusive possession and occupancy of said tracts of land, the defendant, appellant, wrongfully, with force, entered thereon and excluded the complainant therefrom without warrant or authority of law; that if the defendant is permitted to continue its said wrongs and retain possession of said parcels of land the complainant will be deprived of the use thereof, and be forced to procure, by condemnation or otherwise, other tracts of land in the vicinity thereof for its legitimate railroad uses and purposes; that as to said parcel x or No. 2 the complainant, from the necessities of its increasing business and requirements for more extended terminal facilities, side tracks, and storage tracks, had, previous to the injuries complained of, commenced to grade and prepare the same for railroad tracks, to be used in connection with its railroad operations; that it was being prevented by defendant's said wrongs from improving said parcels and laying its railroad tracks thereon; that the possession of said parcels of land by the defendant is inconsistent with the use thereof by the complainant, and would prevent the complainant from using the same as hitherto and as it intends to use the same in the future, thus unduly interfering with the exercise of the complainant's franchise and use of said property as a railroad, which interference would be increased by the defendant further prosecuting its proposed work of construction of a railroad for its use on said property. From the map filed as an exhibit in the case, giving a survey of the proposed route of the defendant's railroad, it is shown to run longitudinally on the right of way of the complainant's railroad. The bill further alleges that the defendant threatens and intends to institute against the complainant proceedings, in some court of the state, to condemn to its use said parcels of land in the event the complainant does not acquiesce in said wrongs and injury, and thereby to undertake to deprive the complainant of said lands under the guise of devoting the same to its public use for railroad purposes, notwithstanding the .fact that said parcels had already been purchased, acquired, dedicated, and appropriated to railroad uses and purposes by the complainant; that unless the defendant is enjoined by the equitable interposition of the court, it would continue its unlawful possession of said lands,

and to place thereon its railroad tracks and other structures, thereby depriving the complainant of its rightful use, and would forthwith proceed to tear up and destroy the complainant's railroad track located as aforesaid. It alleges want of power in the defendant corporation to exercise the right of eminent domain as to said lands, and the existence of any necessity therefor. The bill further charged the defendant with insolvency, and that the complainant had, prior to the bringing of this suit, instituted in said United States Circuit Court an action of ejectment against the defendant to evict it from said lands. The prayer of the bill is that the defendant, its officers, and agents be restrained and enjoined from continuing said possession, and from further trespassing thereon, or further constructing or attempting to construct any railroad or other structures thereon, and from interfering with the complainant in its use of said parcels of land, or with the complainant in constructing railroad tracks or other structures the complainant might desire to erect or construct thereon, and restraining the defendant from instituting or commencing in any court any proceeding whatever, in the nature of condemnation or otherwise against the complainant in relation to said parcels of land, and to enjoin the defendant from tearing up or in any way interfering with the railroad track of the complainant located thereon, until the further order of the court.

The court granted a temporary injunction, enjoining the defendant, its officers, agents, servants, and employes, from further working upon or trespassing upon either of said parcels of land, and from constructing or attempting to construct any railroad or structure over said parcels of land, and from in any manner interfering with the complainant in its use of its railroad track located on said parcel No. 1, and from interfering with the complainant in the use of said parcel No. 2, and further enjoining the defendant from instituting or commencing in any court any proceeding in the nature of condemnation or otherwise against the complainant in relation to said land, and from tearing up, touching or in any manner interfering with the railroad track of the complainant located upon said parcel No. 1. From this order the Colorado Eastern Railroad Company appealed to this court.

Lucius M. Cuthbert (Henry T. Rogers, Daniel B. Ellis, Lewis B. Johnson, and Pierpont Fuller, on the brief), for appellant.

Charles W. Waterman (Joel F. Vaile and William W. Field, on the brief), for appellee.

Before SANBORN, Circuit Judge, and PHILIPS and CARLAND, District Judges.

PHILIPS, District Judge, after stating the case as above, delivered the opinion of this court.

Counsel for appellant has argued this case as if the appeal had been from a final decree making the injunction perpetual. This is a misconception. The case was heard on the bill for a temporary injunction, and the order of the court was only provisional—"until the further order of the court." The bill was sworn to, and no answer thereto has been filed. The allegations of the bill, therefore, for the purposes of a temporary restraining order, stood presumptively true. Affidavits were submitted by both parties on the hearing. Such affidavits are addressed to the consideration of the court in deciding for itself whether or not it should exercise, in the particular case, its judicial discretion in granting or refusing a temporary injunction. Such affidavits are ex parte, made without cross-examination by the adverse party, and not infrequently they are prepared with a free hand, and are often quite perfunctory. The character of

the affiants in this case is such as to entitle their statements to respectful consideration as far as they are material.

The order granting a temporary injunction "does not finally determine the rights of the parties to the action. Its only purpose and effect are to preserve the existing state of things, until the case can be fully heard by the court and the entry of a final decree therein. And it is equally well settled that the granting of a provisional injunction rests in the sound discretion of the trial court, and that it is not necessary that the court should, before granting it, be satisfied from the evidence before it that the plaintiff will certainly prevail upon the final hearing of the cause. On the contrary, 'a probable right, and a probable danger that such right will be defeated without the special interposition of the court,' is all that need be shown as a basis for such an order." Sanitary Reduction Works v. California Reduction Company (C. C.) 94 Fed. 694, 696, 697. It is sufficient to the granting of a temporary restraining order that the complainant discloses the existence of a prima facie right, with a threatened injury to that right by the respondent, and that the granting of such order will probably be attended with less injury to the respondent than to the complainant. Charles v. City of Marion et al. (C. C.) 98 Fed. 166. And it may be granted for the purpose of preserving the statu quo "whenever the questions of law and fact to be ultimately determined in the suit are grave and difficult, and injury to the moving party will be immediate, certain and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted." City of Newton et al. v. Levis, 79 Fed. 715-718, 25 C. C. A. 161. Certain it is that the court should not enter into a nice calculation of the comparative inconvenience and probable loss of the respective parties, when it appears prima facie that without consent, without due notice to or legal process against the complainant, the defendant entered upon the right of way of the complainant railroad company in an attempt to construct thereon another railroad track. It is true that the bill of complaint discloses that the defendant had already entered upon complainant's right of way, and had begun the construction thereon of a railroad bed, and was preparing it for use as a railroad. But this preparation for the construction of defendant's railroad was not completed. It was only in progress. And the bill shows that the complainant had instituted an action of ejectment to evict the defendant, prior to the filing of the bill of complaint herein. The aid of such a bill to the action of ejectment is recognized in courts of equity, and at times is highly remedial and proper to maintain the statu quo and stay the hand of the alleged wrongful intruder from doing further acts upon the invaded premises, which, if not wholly irreparable, would likely produce complications and inflict injuries difficult to remedy. Buskirk et al. v. King, 72 Fed. 22, 18 C. C. A. 418, 25 U. S. App. 607; Natoma W. & M. Co. v. Clarkin, 14 Cal. 544, 548; Riemer v. Johnke, 37 Wis. 258, 261, 262; People v. Alberty, 11 Wend. 160, 162; Bush v. Phillips, 3 Wend. 428.

By affidavits and certified transcript of the record, the defendant on the hearing disclosed the fact that at the time of filing the bill

of complaint, it was proceeding in the state district court to condemn the land in question to its use, for the construction thereon of its railroad. On this fact appellant's counsel advances the proposition that this suit in the federal court is an attempt to stay a proceeding at law, already instituted, in the state court, and is therefore interdicted by section 720, Rev. St. U. S. [U. S. Comp. St. 1901, p. 581], which declares that:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

The bill of complaint does not disclose that any such condemnation proceeding had been instituted against the complainant, but the allegation is that the defendant threatens to begin such proceeding. The affidavits and the record presented by the defendant at the hearing only disclose the fact that in the month of March, 1905, just preceding the month in which the bill of complaint was filed, the defendant instituted such condemnation proceeding against the Burlington & Colorado Railroad Company, the apparent owner of record. This complainant was not named as a party defendant or served with any notice or process therein. This being conceded, the proceeding instituted in the state court, as to the complainant, was clearly res inter alios acta; and therefore the provision of said section 720 has no application, for the palpable reason that no jurisdiction was obtained of the subject or the parties involved in the bill of complaint. To escape this dilemma, the learned counsel for appellant has recourse to the provision of the Colorado statute (3 Mills' Ann. St. Rev. Supp. § 1716,) which provides, in condemnation proceedings, that "the names of all persons interested therein as owners or otherwise as appearing of record, if known, or if not known stating that fact," shall be set forth in the petition. The contention is that inasmuch as the record of the county in which the lands are located showed that the Burlington & Colorado Railroad Company was the ostensible owner, yet, notwithstanding it transpires, as shown by the affidavits in support of the bill as well as its allegations, that whatever right or interest the Burlington & Colorado Railroad Company had to this land had long prior to the institution of the proceeding for condemnation been conveyed to and vested in the complainant, the Chicago, Burlington & Quincy Railway Company, a separate, distinct body corporate, the proceeding nevertheless was sufficient to entitle the defendant to enter upon the complainant's right of way, and after ascertaining the amount of damages to the owner of the land and paying the same into court, as by statute provided, it had the right to enter and build its road; and that the only right now open to complainant is either to accept said money so paid into court, or to intervene in the condemnation proceeding, as provided by section 1726 of the statute (Mills' Ann. St.), which is as follows:

"Any person not made a party to such proceeding may become such by filing a cross-petition at any time before the hearing, setting forth that he is an owner or has an interest in the property sought to be taken or damaged by the petitioner, and stating the character and extent of such interest, and the rights of such person shall thereupon be fully considered and determined."

This position does not commend itself to our approval. It challenges the right to due process of law, that rule of justice which hears before it condemns, that proceeds upon inquiry, and renders judgment only after formal trial. The law abhors a judgment without notice. Under the federal Constitution and the judiciary act, passed pursuant thereto, the nonresident citizen, owning real estate in the state of Colorado, has the right to appeal to the federal court for the just protection of his property, whenever its ownership and enjoyment are invaded against his consent and without notice or legal process. No state Legislature under any pretense can strike down or condition this right.

As well put by appellee's counsel, under the construction of the statute contended for, it would result that if A., possessing the right of eminent domain, desired to appropriate a piece of land which he had reason to know belonged to and was in the possession of B., yet, if the record for registration of deeds showed the title to be in the name of C., the actual grantor of B., A. could, by the institution of condemnation proceeding against C., obtain an ex parte order of the court to oust B., and put A. in possession, with the only right left to B. to either accept the money paid into court, thereby creating an estoppel against him to contest the right of appropriating his land, or to intervene in the proceeding. In case of a nonresident owner he might never hear of the unpublished proceeding until the matter had passed into final judgment in the state court. The mere statement of such a proposition carries with it its own refutation.

The primary requirement of the statute is that the petition shall set forth "the names of all persons interested." Where the names of interested parties are not known, the statute, for the mere purpose of expediting the desire of the petitioner to construct a railroad, authorizes the institution of proceedings against the owner appearing of record, or if not known stating that fact. The statute does not and could not lawfully undertake to conclude the rights and transmute the title of the real owner without notice and having his day in court. More than that, if recourse is had to the affidavits in this case it appears that Mr. Rogers, the president of the Colorado Eastern Railroad Company, before the hearing of the condemnation proceedings, came into possession of facts sufficient to advise him that the complainant company was claiming an interest in this property, and that it would not come to any convention with the appellant respecting a concession of the right of way.

The right of the complainant as a nonresident citizen to appeal to the equity jurisdiction of the federal courts is not affected by the provision of said section 1726 of the Colorado statute, which authorized it to enter its voluntary appearance and become a party to said condemnation proceeding. It is mere permissive in character, and cannot be construed to operate as a denial of the nonresident's right to invoke the jurisdiction of the federal court to protect his property rights when invaded without due process of law. In Smyth v. Ames, 169 U. S. 466, 516, 18 Sup. Ct. 418, 422, 42 L. Ed. 819, where a like contention on principle was made, that a specific statute

of the state having prescribed a particular method for the protection of complainant's right, furnished the adequate remedy at law within the meaning of section 723, Rev. St. U. S. [U. S. Comp. St. 1901, p. 583], the court said:

"We cannot accept this view of the equity jurisdiction of the Circuit Courts of the United States. The adequacy or inadequacy of a remedy at law for the protection of the rights of one entitled upon any ground to invoke the powers of a federal court is not to be conclusively determined by the statutes of the particular state in which suit may be brought. One who is entitled to sue in the federal Circuit Court may invoke its jurisdiction in equity whenever the established principles and rules of equity permit such a suit in that court; and he cannot be deprived of that right by reason of his being allowed to sue at law in a state court on the same cause of action. It is true that an enlargement of equitable rights arising from the statutes of a state may be administered by the Circuit Courts of the United States [citing authorities]. But if the case in its essence be one cognizable in equity, the plaintiff—the required value being in dispute—may invoke the equity powers of the proper Circuit Court of the United States whenever jurisdiction attaches by reason of diverse citizenship or upon any other ground of federal jurisdiction [citing authorities]. A party by going into a national court does not, this court has said, lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality; that the wise policy of the Constitution gives him a choice of tribunals [citing authorities]. So, 'whenever a citizen of a state can go into the courts of a state to defend his property against the illegal acts of its officers, a citizen of another state may invoke the jurisdiction of the federal courts to maintain a like defense. A state cannot tie up a citizen of another state, having property rights within its territory invaded by unauthorized acts of its own officers, to suits for redress in its own courts' [citing authorities]."

On the case presented we are of opinion that the complainant was entitled to a temporary injunction. This, without here deciding whether or not the land in question is subject to condemnation for the uses claimed by the appellant. That question should not be considered by the court until after issue joined on the merits, evidence taken and heard, in the due course of procedure. We are of opinion, however, that the temporary decree of the court went too far in enjoining the appellant from instituting condemnation proceedings against the appellee. It has been ruled in Union Terminal Company v. Chicago, Burlington & Quincy Railway Company (C. C.) 119 Fed. 209, and Madisonville Traction Company v. Saint Bernard Mining Company (C. C.) 130 Fed. 792, affirmed by the Supreme Court in 196 U. S. 239, 25 Sup. Ct. 251, 49 L. Ed. 462, that a condemnation proceeding instituted in the state court against a nonresident citizen owner may be removed by him into the federal court. And, as a corollary, it is to be conceded that the nonresident citizen may institute a condemnation proceeding in the first instance in the federal Circuit Court, as such a proceeding partakes of the quality of a suit at law. This appellee, however, is not seeking to have any land condemned for a public use, but resists the appropriation by appellant of its land. As the statute which confers the exercise of the power of eminent domain on the petitioner authorizes it to institute such proceeding in the local district court, and as by section 1719 of said statute (Mills' Ann. St.) the petitioner is authorized to amend the petition by bringing in a new party at any stage of the proceeding, we are unwilling to

deny to it this statutory right. It is probable that the appellant might, by cross-bill in the present suit, present the question of condemnation, and, if entitled thereto, obtain a decree of condemnation by this court. If, however, it should desire to proceed under the state statute in the state court by bringing in the appellee, it should have the right to do so, leaving the appellee free to remove the case into the federal court. In either event the question of the right of appellant to appropriate by condemnation the lands in controversy would have to be tried out in the federal jurisdiction.

The temporary decree made by the Circuit Court is affirmed, save as to that portion which enjoins the appellant from instituting condemnation proceedings in the state court or otherwise; and the cause is remanded to the Circuit Court with directions to set aside and vacate such provision of the decree, and for further proceedings in accordance with this opinion. The costs of the appeal to be taxed one-half against the appellant and one-half against the appellee.